The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. The next matter is 419-0003, People of the State of Illinois v. Jason Andrews. Counsel for the Appellant, please state your name for the record. Thank you, Your Honor. May it please the Court. My name is Brian McIntyre. I am with the Office of the State Appellate Defender. I represent the Appellant, Jason Andrews. Counsel for the Appellee. May it please the Court. I am Allison Paige Brooks. I represent the people of the State of Illinois on behalf of the State's Attorney's Appellate Prosecutor. Very well, thank you. Counsel, you may proceed. Thank you, Your Honor. I'd like to begin today by briefly discussing the Court's findings in this case. As we know, Mr. Andrews was accused of three separate deliveries of controlled substance supposed to have taken place in December of 2017, January of 2018, and December of 20—or, sorry, in February of 2018. The Court found that with regard to those first two allegations, there was not enough evidence to show that Mr. Andrews had been present to participate in the transactions the Court believed had happened. Specifically— Mr. McIntyre? Yes. Let me interject real quick. A little bit of feedback. Maybe if you turn your volume down just a little bit. We're just getting a little bit of noise when you speak, other than what you're saying. Sorry to interrupt. I have no problem. I would rather know. I'm not sure how to do that, unfortunately. Okay. It's not such a problem that we can't follow you, so that's fine. I'll try to move back a little. Thank you, Your Honor. The Court found that the reason it did not have evidence to support those first two allegations was because Mr. Jenkins was a thoroughly incredible witness. He was a drug addict of 30 years. He believed he had dementia. He had been repeatedly hit in the head with baseball bats. He admits that he would agree with anything the prosecutor said, as long as it sounded about right, but then refuses to answer defense counsel's questions because he can't remember the exact details. So the Court found that those first two counts were not sufficiently supported by evidence to support a conviction. The Court found, however, that there was other evidence that Mr. Andrews was present at Jenkins' apartment on February 13, 2018, and therefore found that Mr. Jenkins' word was corroborated. Unfortunately, what it overlooked was that, unlike the first two occasions, there was no evidence that Mr. Jenkins acquired drugs during the relevant time period on February 13, 2018. Based on the fact that Detective Brown tells us the informant told me he was arranging a transaction and did not provide any other basis for the belief that a drug transaction occurred that day, and based on the much longer time period that was involved in the first two transactions, the evidence that any drugs were brought into Mr. Jenkins' home on February 13, 2018, was insubstantial, minimal, and all dependent on Jenkins' credibility, which the Court found insufficient. But even if this Court finds that a rational trier of fact could have convicted Mr. Andrews for the February 13 incident, there's more evidence that was introduced, admitted, but not brought to the Court's attention, and counsel provided a defense strategy. His stated theory of the defense was that Mr. Jenkins had framed Mr. Andrews. He had evidence that Mr. Jenkins had defied police controls. Detective Brown told them that the only way to trust Mr. Jenkins was based on the controls that police put on him. He was supposed to remain on camera in the small portion of his home that was searched so that police could be sure he did not access unsearched portions of his home to retrieve drugs. But what we see in the video is that of 73 minutes Mr. Jenkins was alone in his apartment, he was on camera for a total of about 72 seconds. The rest of the time he had unrestricted access to all of his apartments, areas that were searched and areas that were not. And perhaps most importantly, after Mr. Andrews comes into Mr. Jenkins' home and accepts money from him on camera, which by the way the Court found that it did not see evidence of Mr. Andrews giving anything to Mr. Jenkins. Mr. Jenkins can be seen in this video rushing off camera and if the audio is turned on, it was not for the 30 seconds that were played for the Court. But if the audio is turned on, we can hear something being moved in the background for another 30 seconds before Mr. Jenkins calls police to tell them he has their drugs. Now given that counsel provided no evidence to support his theory of the defense and his theory was that Jenkins had retrieved his own to frame Mr. Andrews, counsel was ineffective for failing to present consistent expulpatory evidence which was admitted and to argue it before the Court. There's no evidence of course, no indication in the record that the Court did go back and review the remainder of the video or did review any video with sound. Mr. McIntyre, is there anything to suggest that the Court did not view the video? Your Honor, only the absence of any mention to additional evidence. The fact that no one drew the Court's attention to the remainder of the video or the need to review it and the Court did not reference audio or any other portion of the video. Well, didn't the Court specifically take the time to indicate that it wanted to review some matters and also referenced the video? Your Honor, the Court did reference the 30-second segment of the video which the it said that it wanted to review other matters but it did not say what they were. Ultimately though, it would be better if the Court had reviewed this expulpatory evidence because it would make the reasonableness of its ruling that much less because with this evidence showing that Mr. Jenkins had defied the controls police placed on him, it was that much less reasonable to find that the transaction in fact occurred back then. Well, the entire video was admitted, correct? Yes, Your Honor. And so what is your basis for suggesting that the Court did not review the entire video that was admitted? Your Honor, I do not intend to suggest that I know whether the Court reviewed it or not. However, I felt it would be inappropriate to speculate that the Court did review this video without some affirmative indication in the record. Again, if the Court had reviewed the video, the reasonableness of the conviction would be that much less. So I believe it would be better if it had, but I don't have an indication that that happened. And either way, counsel would still be ineffective for failing to draw the Court's attention to these portions of the video and to argue them as the only evidence. Didn't counsel argue regarding the credibility of the informant or the confidential source? Yes, Your Honor, and he did so successfully. However, he also argued that the drugs produced by Jenkins belonged to Jenkins and did not come from Mr. Andrews. And this is evidence which tends to support that theory, as opposed to the speculation on which he relied. Because he had no evidence and chose to eschew the only evidence, or because he, excuse me, presented no evidence and chose to avoid or eschew the only evidence he did have, which tended to support his theory, his approach was unreasonable. There's no reasonable trial strategy there. Well, did informant was alone in the apartment for a significant period of time and only on video for a certain period of time? Your Honor, he argued that Mr. Jenkins was alone in the apartment for a significant period of time, but based on my recollection of the case, he did not draw the Court's attention to the fact that Mr. Jenkins was also off camera for the majority of that time. And again, Detective Brown said the only way we can trust Mr. Jenkins is because we stay in front of the camera to make sure he was there. By the way, he knew where that camera was because he positioned himself in front of it to hand money to Mr. Andrews. Your Honor, even if there is no specific deficiency identified in counsel's performance, there's still the fact that he operated under not one, but two separate per se conflicts of interest. Now, I'd like to discuss the second of those first, because I believe it's the clearer case. Under the second category, an attorney possesses a per se conflict of interest when they simultaneously represent a state's witness and the defendant. Now, we see a close parallel for this in this Court's decision in People v. Daly, in which defense counsel had previously represented the confidential source in a delivery of controlled substance charge and was now representing the defendant against whom that source wanted to testify, and then wound up cross-examining his former client at trial. Now, in that case, there were additional facts. In fact, the attorney had helped the confidential source enter the confidential source agreement in that case, but this Court found that it was not dispositive. This Court found that if counsel had represented the witness some time ago, many years before, in a divorce case, a matter unrelated to the drug charge that was facing his client, then there might not have been a per se conflict of interest. But instead, counsel was placed in the position of cross-examining his former client about privileged information, specifically their attorney-client relationship and the case on which counsel had represented this informant. We see the exact same thing in this case. There is a slightly longer delay of roughly two and a half years, I believe, from March of 2016, when counsel concluded his 2018, when he cross-examined his former client. I would note that in Daly, the Court found the fact that counsel was expected to cross-examine his former client about their relationship showed why it was relevant and why it was a per se conflict, that counsel had become privy to all sorts of privileged information for representing this person and could not later use that information against his former client, even if the actual representation had ended. I was that counsel's representation of the witness could be seen as continuing indefinitely, at least to the extent he would ever be called upon to cross-examine his former client about their relationship. And we see that here, where once again, counsel decides to cross-examine his former client, who is a witness for the state, and he even comes to the point of asking, well, I was, you know, you had at least this one 2016 conviction, didn't you? Oh yes, you were my attorney on that. And again, it's not a specific deficiency, it's not an actual conflict we allege here, because we don't know what privileged information counsel had obtained from Mr. Jenkins. Instead, we see that the nature of the relationship meant that counsel was prohibited from using any information he obtained from his relationship with Mr. Jenkins against Mr. Jenkins at a later date. And here, where that case was relevant to the instant proceeding, counsel was between a rock and a hard place. He was both required to fully investigate Jenkins' history with police and history of drug transactions, and he was prohibited from, even through independent investigation, using anything he had learned through that protected relationship. In fact, in this case, counsel elected not to file any motions in limine to challenge the informant. As Dailing noted, a confidential source will be a critical witness in almost every drug prosecution of this nature. And counsel explicitly said before trial that he was simply going to cross-examine his former client at trial, but he did not bring that to anyone's attention until later. After trial, counsel said, well, I determined there was no conflict, so I didn't tell anyone he was my about the lack of notice about this relationship. Do you agree that counsel at trial was not representing both his client on trial and Mr. Jenkins at the same time? Your Honor, I would agree that he was not representing them. I believe, however, he did have a concurrent obligation to both of them. And again, that is exactly the same as in Dailing, where counsel's representation of the informant had ended, but the knowledge he had obtained through that information had not. And that was the basis of this court's decision. Go ahead. In Dailing, though, would you say it's fair to say that in that case, the attorney literally had to cross-examine the witness regarding the matter upon which he represented and that did not occur here? We're simply talking about a prior conviction that would go to credibility. Your Honor, I would not agree. I would say that in Dailing, the court explicitly said this highlights the relevance of the former conviction. It did not say that because counsel cross-examined his former client about that case, that was where the conflict arose. It said that because he had to cross-examine the former client with regard to that case, it shows why the case was relevant and shows why this conflict acted on the attorney. Similarly here, we have counsel actually does bring up the former offense, but he doesn't go into any detail. He is not able in any way to explore anything he could have learned about Jenkins or his ability and tendency to hide drugs or to frame someone, for instance, through that prior representation. The reason this is a conflict case is that we cannot know what privileged information counsel obtained. That's the nature of the privilege. But there was another... May I interrupt you for a moment? Would it matter to your analysis if Jenkins' prior conviction instead of in 2016 was in 2006? Yes, Your Honor. Thank you for that question. I believe that actually would make a big difference. I believe we could find guidance here in the Montgomery Rule, a consistent rule of law which holds that within 10 years, those prior convictions are going to be relevant. Now, as their relevance wanes, we go to that second part of the daily decision. It said the representation could be seen as continuing indefinitely at least to the point that the convictions are relevant, at least to the point counsel might be called upon to bring out those convictions. And so I think that the fact that it's within two and a half years here, while a little bit less compelling than the closer proximity in daily, it's one quarter of the 10-year limit envisioned by Montgomery. Now, aside from that, that conflict, the second category per se conflict, concurrent obligation to a state's witness, can only arise once the witness is called at trial. But counsel made pretrial decisions that were impacted by this conflict as well. As I mentioned previously, counsel originally said he would file a pretrial motion in limine to challenge the confidential informant's testimony. Then at the next hearing, when Mr. Andrews again raised his concerns that counsel had not done so, counsel said, no, I'm not going to. Instead, I'll cross-examine him at trial. We've already discussed why that could be a problem. But here, Mr. Jenkins was not simply a witness. He was not simply someone who observed what happened. Mr. Jenkins, in his individual capacity, if he wanted to report a crime, could call Crimestoppers. But before any crime allegedly occurred, Mr. Jenkins entered a contractual relationship with the Bloomington Police Department. Detective Brown says, we will not use anyone as a confidential source until they establish that contractual relationship. They agree to refrain from the use of drugs, not to commit further crimes, to submit to our controls so we can ensure their reliability. Now, again, Mr. Jenkins did continue to use drugs. He continued to commit further crimes, and he was hoping for leniency on those when he testified. And he did not follow those controls. But what's important here is that he was not just involved after an offense occurred. He, in fact, arranged criminal activity on behalf of the Bloomington Police Department. He exercised power as confidential source 1219 that he never could have had on his own. Henry Jenkins could call Crimestoppers. Confidential source 1219 could make a phone call and tell police that he had arranged a drug transaction. Detective Brown testified three different times that that's what happened. The informant told me that he'd arranged a transaction. Detectives believed him. And the first two times, he did seem to have completed a transaction. But that third time, Jenkins sets up the location of the purported buy. He has previously told them that he's trying to set up or to provide them with Jarrett Johnson, and now switches his target because at that second, the January occasion, a detective saw that this was not Jarrett Johnson they were trying to get. And he is, instead of going into a building and staying there for a minute or two, coming back out with drugs and no money, he's left alone in his own home, most of it unsearched, for more than an hour. He's given almost free reign with very little control to accuse who he wants and provide police with what evidence he wants to get them to repeat his testimony. And this is all through that confidential source agreement. As the detective tells us, Bloomington is specific that they won't use just an individual. They have to have this business relationship, this confidential source identifier. And through that relationship, Jenkins became an entity assisting the prosecution. Because he was an entity assisting the prosecution in that way, the fact that counsel had ever represented him raised a problem. And it is, again, the same problem identified in Daly. This confidential source was going to be a critical witness. Counsel, let me ask you this. How do you get around the Fields case where the Supreme Court held that a person does not meet the definition of an entity when it comes to whether or not there is a per se conflict? Your Honor, I don't see it as getting around Fields so much. In Fields, they argued that all states' witnesses were entities assisting the prosecution. The court found that was not true. The Supreme Court found that the first and second category of per se conflict are separate and distinct. And this separate conflict, through Mr. Jenkins' close relationship as CS-1219 in prosecution, that arose, as I mentioned, well before trial. Again, the second category arises at trial, witnesses. And that was what they argued in Fields, that all witnesses counted. Here, we have the conflict arising before trial, counsels making pretrial decisions based on it. But again, more importantly, Fields never actually addressed whether that particular confidential source was an entity. They just said that the argument that all witnesses are a victim is often an individual and fits into that first category. So it seems that the Supreme Court simply was not considering that aspect. It was not before the court. Based on the facts of this case, though, there was a clear contractual relationship. There were powers that Jenkins exercised as CS-1219. He could never have exercised by himself. He was paid. He had charges against him dismissed. And he chose a target for the investigation, apparently changed targets mid-investigation, once his information showed to be unreliable, as to Jarrett Johnson. Now, sir, may I just ask one additional question in that regard? Do you have any authority, whether it's case authority, dictionary definition, that would support your assertion that an individual, that a person can be an entity? Yes, Your Honor. And that would be through contract law, where even a corporation or a business entity held by a single person is separate and distinct based on the formation through contract and the special obligations and privileges that that entity would have only through this relationship. And it is specifically the evidence of the contract with BPD, Bloomington Police, that shows that this was, in this case, an entity assisting the prosecution, even if not every confidential source will always be an entity assisting the prosecution. It's what you have in your brief, right? Yes, Your Honor. I would also note that an entity is, excuse me, the category does not include corporate entities. It does not limit itself to municipal entities. It is entities. I see that I am out of time. Thank you, Your Honor. Thank you, counsel. Ms. Brooks? Thank you, Your Honors. Good morning. With respect to the reasonable doubt argument, the standard of due process requires proof beyond a reasonable doubt. It pertains to the question of whether the record evidence was sufficient to remove all reasonable doubt of the guilt. And so that means that this court has to look at the record evidence and not necessarily the trial court's findings in a bench trial situation because the same standard of review applies to both bench trials and jury trials. And because this was a bench trial, the question still is, is the record evidence sufficient to prove the case, the prosecution's case, all the elements of the crime charged beyond a reasonable doubt? And so that's essentially the totality of the evidence before the trial court, of which the trial court noted, which was not just Henry Jenkins' testimony as the informant, but the fact is that after the defendant was inside Jenkins' place for about a minute, and then the police then tried to stop him, he attempts to flee that stop, which is an inference, again, and all reasonable inferences must be accepted in favor of the prosecution, a reasonable inference that he did more than just simply pay off an old debt, which is the sort of the argument the defense might make as a reasonable hypothesis of innocence is when the defendant has the $200 of prerecorded money on him, the question is, why did he get that money? And Jenkins says, because the defendant delivered him drugs, a hand-to-hand transaction that was, although not entirely clear, it was, in fact, recorded on a covert surveillance video. So there's also that element as well. And so although the trial court found sufficient doubt to not convict the defendant beyond a reasonable doubt of the first two charged transactions, the totality of the evidence was sufficient for the trial court to reasonably find that the prosecution had proved its case beyond a reasonable doubt with respect to the third transaction. So therefore, the trial court's reasoning was reasonable. And in fact, because the trial court found a reasonable doubt of the first two does not require the trial court also to find a reasonable doubt as to the third transaction for which there was different circumstances and much more corroboration. And with respect to the next issue, because People's Exhibit No. 4 was admitted in its entirety, this court should presume that the trial court, in fact, reviewed all the evidence absent anything affirmative to the contrary in the record of which defense counsel, appellate counsel, cites nothing in the record to overcome a presumption that the trial court, in fact, reviewed all the evidence that was admitted at the trial. And so therefore, in a question of ineffective assistance of counsel, the record has to show prejudice. And if the trial court's reviewing this evidence, then it really just gets down to a claim of, well, is defense counsel ineffective providing unreasonable assistance by not actually highlighting that part of the evidence, referring to unidentified sounds in the background of the video, for example, and more forcefully arguing the points. But here, the trial court was well satisfied with the proof of the third count, despite the arguments that, according to defense counsel's closing argument, that there was a recording, it was an hour long, and there were rooms that the police did not search. So the trial court was already well aware that there is at least a possibility that Jenkins could have obtained drugs during the time that he was off camera, and of which, from spots that the police did not search. But because of the corroboration, again, the defendant's attempt to flee afterwards, his possession of the prerecorded buy money, the fact that it seems like a hand-to-hand transaction is occurring in front of the covert video surveillance, the defendant is unable to persuade, meet his burden of persuading, that there was sufficient prejudice for his claim that essentially what it would be reduced to, that defense counsel should provide a better closing argument or published additional portions of the video for the trial court for its review. And with respect to the per se conflict arguments, this is sort of a creative argument by the defense, because in claiming that Jenkins was an individual and entity CS 1219 is, according to defense, akin to like a corporation, a separate entity from the defendant, or I'm sorry, from Jenkins as an individual, but sort of misses the point here, is that in order for a per se conflict of interest to exist under the entity assisting the prosecution prong, there has to be showing that the defendant's attorney here, McEldowney, had represented the entity. And I do not know if anything in the record that shows that McEldowney ever represented the entity CS 1219, that the sort of like corporate type entity of which the defendant constructs here, according to his argument, if that is in fact an entity separate from a Jenkins individual, where is the showing that McEldowney ever represented a separate entity from Jenkins the individual. So there wouldn't necessarily be any sort of like representation of the defendant and an entity assisting the prosecution. McEldowney had represented Henry Jenkins, the individual at a prior time. So the defendant is attempting to do away with the requirement of showing contemporaneous representation in cases in which the person is a witness for the prosecution. So that category is more limited because you have to have contemporaneous representation, where for the purpose of an entity assisting the prosecution, contemporaneous representation is not a requirement. But here, I think what's overlooked by the defendant's argument is that there's no representation of a separate entity by McEldowney. So even if you constructed a separate entity and considered it to be a separate entity, there has to still be representation by McEldowney of that entity. And I don't know that that's in the record. Because McEldowney was Jenkins' lawyer when Jenkins received a prior conviction in March of 2016. And so what happens in this case is Henry Jenkins then, after that prior conviction, that case is done with, then he receives a, delivers a controlled substance, he's apprehended by police, he becomes an informant in December of 2017 for a delivery that happened in 2017. So essentially, this is completely different from the Daley situation, now going into actual, in the actual conflict argument the defendant makes. In Daley, Endress was the attorney for Daley at trial, but he'd also helped secure Jockish's cooperation. His cooperation agreement then resulted in undercover buys from Daley. So therefore, that made that prior, that prior representation continuing for purposes of the contemporaneous with trial. What that very key element is missing in this situation, what would make it contemporaneous is if here McEldowney had represented Henry Jenkins in 2017, when he arranged to become an informant, that led to the buys that the defendant made, the defendant delivered to Jenkins. And without that sort of like link that is missing from the, this case that was in the Daley case, the representation does not continue and it doesn't, it doesn't mean that it's contemporaneous with the trial of the defendant here. So that's the key distinction is that here, the prior conviction upon which McEldowney had represented Henry Jenkins was a completely closed case. It didn't have any connection to this case. This case, it was, it did not result in any sort of cooperation agreement like in Daley. And so the Montgomery rule on which the defendant relies, it's a judge-made rule that limits the consideration of prior convictions for purposes of impeaching the credibility of a witness. But the prior conviction is admissible. And so I do not understand how the argument could be made that the somehow client confidences are at matter when the only thing the defense attorney McEldowney would have to do is impeach his former clients about a prior conviction, which is a matter of public record. It does not involve any sort of client confidences. So there's no limitation on cross-examination for purposes of the actual conflict of interest argument. And also with their final argument is with respect to the post-trial motion, when the defendant represented himself at the post-trial motion, the defendant made no showing that he was actually prohibited by the trial court in any ruling from either tendering a witness to testify, including his former attorney, or to offer any sort of evidence at the hearing. He was given opportunities to speak. So he was in no way prohibited from tendering a witness or offering evidence at that hearing on his post-trial motion. And so for those reasons, I would request this court to affirm the defense conviction. It would entertain any questions you might have. Thank you. Thank you. Rebuttal, Mr. McIntyre. Yes. Thank you, Your Honor. I would note that I did not raise an actual conflict argument. There are two different per se conflicts. There is no actual conflict alleged. And that means that we're not pointing to a specific thing that counsel failed to ask. What we're pointing to are conflicting obligations. And as the court found in Daley, the fact of the relation between these two offenses, the creation of the confidential source agreement being done with counsel, that was not dispositive. The court, in giving an example, did not say, oh, if it had been the same exact charge, but one year later, then there would be no problem. The court said, if it had been many years later on a completely different type of charge, there might not have been a per se conflict. And what is important here is, again, counsel cannot tell us what privileged information he got. Counsel cannot get to further impeachables, including Mr. Jenkins' credibility with police, propensity for hiding drugs, even if he knows about them. Specifically, if he knows about them, he cannot, through further investigation, uncover those, even if they were public record. It is the concurrent obligation to maintain competences of a former client and to vigorously represent his current client. That is the second category per se conflict here. I would also note that in a first category per se conflict, even if the person was not a victim at the time that counsel represented them, the fact that counsel used to represent the person who is now a victim or now acting as a victim for purposes of conflict, it would be incongruous to argue or to hold that the fact that an entity had not yet been established means that there's simply no relationship. And again, it would not comport with the victims, which were also first category per se conflicts. I didn't have a chance to argue about the sufficiency of the final hearing, but I would note that counsel was waived. The court accepted a waiver of counsel and then said, start your argument. It heard that Mr. Andrews did not have all the evidence he needed to make his argument, so it continued. And when they came back, it said, resume your argument. Then the court examined counsel and never gave Mr. Andrews an opportunity to do so. So what's really at issue here is that once he proceeded pro se, he had full due process rights at that hearing. But instead of providing them, the court seemed to engage in some sort of strange hybrid preliminary critical inquiry after it accepted a waiver of counsel. And so by never providing an opportunity for evidence and instead telling him arguments only, the court did deny him due process. And do we have any further questions, John? I don't see any. All right. All right. Very well. Thank you both. The court will take these matters under advisement and we will now stand in recess. Thank you.